Case No. 20-5199, Vapor Technology Association, et al. v. FDA, et al. Argument not to exceed 15 minutes per side. Mr. Heyer, you may proceed for the appellant. Thank you, Gary. Good morning and may it please the Court, Eric Heyer on behalf of Appellant Vapor Stockroom, LLC. I'd like to reserve three minutes for a rebuttal, please. Very well. Thank you. This appeal presents a couple of fundamental issues. The first being whether FDA can reverse its long-standing position to require a regulated entity to submit a mandatory application for marketing approval without first finalizing a rule specifying the required contents of that application and at the same time avoid judicial review under the APA's arbitrary and capricious authorities. Well, I mean, at this point in the more recent, I guess it was the 2020 guidance, whatever, you know, the separate guidance that they kicked out after the injunction, why not bring a suit challenging that? Yeah, the issue here, Your Honor, in this case, in this appeal, has been very complicated by the timing of this and the timing of the district court's order is there really are now two separate legs supporting this deadline, which is now September 9th of this year. And you really can't challenge one without challenging the other in the same proceeding for the following reason. I'm not so sure about that. I mean, the Fourth Circuit thought that a challenge to the injunction was mooted out by the subsequent guidance issued by the agency. If the Fourth Circuit is right about that, it would seem like the later guidance is now the operative, you know, order, document, whatever. And you all ought to just get on with challenging that, it would seem. Well, the issue is that the Maryland District Court's order remains in place. And the minute I go and challenge just the 2020 guidance, the first thing FDA and DOJ are going to point to is they're going to point to the Maryland District Court order and say, well, it's not enough to knock out the guidance because we're still subject to this district court order. In fact, they abandoned voluntarily their appeal before the Fourth Circuit without re-raising the same subject matter and standing issues that they had previously raised before the district court judge. I mean, if you're here asking us de facto to invalidate or nullify or protect you from an injunction entered by the district court in Maryland, I mean, I would suggest that that's going to obviously fail. I mean, if that's what you're after at the end of the day is you want relief from a district court injunction from Maryland, I mean, that's just not going to happen. I understand your point, Your Honor, but that's not what we're asking for. There's nothing in the Maryland District Court's order that requires FDA to take enforcement action against vapor stock or any entity similarly situated. That is still an action that would be within FDA's discretion under the Maryland District Court order. So what we are ultimately looking for is an injunction preventing FDA from taking that enforcement action, but that doesn't implicate the Maryland District Court order one way or the other. They're not overlapping Venn court orders if we get the relief that we're ultimately asking for. But anyway, going back to my earlier point, the issue is if we only challenge the 2020 guidance, FDA would say, well, that's moved because the Maryland District Court order is still in place. That's why really we're back in this corner of having to raise. I understand it's belatedly, but the court does have the authority to address the guidance in the first instance. It's a pure law that the court can take up in the first instance. It is that rare occurrence because frankly, I don't have any other option given the timing and how FDA has undertaken these things in the timing of the district court order. We certainly intended to raise it before the district court and the district court ruled before we could do that. So that's the best situation de facto that we're left in. Now, of course, the preliminary issue that this court would also need to deal with would be the issue of causation and article three standing. And of the district court's ruling dismissing the case for lack of subject matter jurisdiction. You know, I mean, as to justiciability, the district court said that your harm is not fairly traceable to, I guess, to what was the thing that it didn't link up to? Well, the way that I would present it is FDA's determination that it can require, that it's appropriate to accelerate this deadline. In this case, it was initially by 27 months from the earlier deadline to a date before it finalizes a rule to NUS file a PMTA to a date before a rule is finalized specifying the contents of the PMTA. But that FDA action, that is in the briefing before the Maryland district court. Is that my understanding? That you're saying that they expressed that view in the limitation before the Maryland district court. And then that led to Maryland district court action. And that's your injury, right? Yes. So it's not the briefing. It's the declaration that the center for tobacco products director, Mitch Zeller, his declaration that was filed and effectively telling half of the story and explaining why it was FDA's view that it would be appropriate to accelerate the without considering all the other circumstances that we've laid out in our briefing. That's contained in the briefing document though, right? That's where the agency made that. Correct. Correct. That was filed with the Maryland court. It's an attachment to a brief. That's the agency action that you're challenging here. It's the agency determination and the agency determination was then pushed out sort of through two vehicles. One being the declaration that was filed with the Maryland district court. The other being much later, the 2020 guidance document, but it's the same effective agency action, no matter which vehicle you look at, how it was pushed out. I mean, if it's the same agency action as the later guidance, as you just said, it would seem to me that even if we think that you have some harm that's traceable to an attachment in a brief in the Maryland district court, there's nothing we can do to redress that here, given the later independent action by the agency, which reiterated the deadline that you're unhappy about. So you would seem to have a redressability problem in addition to the causation problem. And so why isn't there a redressability problem as well? Respectfully, I disagree your honor, because the redress is prevent FDA and join FDA from taking enforcement action against my client. And that redresses the injury. If there's no enforcement action against them, that's entirely redressable. There's no need to do anything with the Maryland district order because the harm would come from FDA's own enforcement action. So we would be saying that the policy as embodied in the declaration was arbitrary and capricious. It's basically like an APA challenge. Correct. Correct. Your honor, because it failed to consider significant aspects of the problem, right? And we've laid those out in the brief. The fact we have 3.5 million vaping products all subject to this requirement and very limited capacity in terms of the scientific consultants and analytical labs, which has been further strained by the COVID-19 circumstances. Now, everyone trying in this bottleneck of a limited period of months to prepare these applications, there just simply is not the capacity to do it. And so, especially from smaller manufacturers like VaporStock, which is a small business. And I apologize if I'm going over ground that's been covered before, but the deadlines, the earlier deadlines now that the district court had set, is that now embodied in the new, whatever the guidance is, the 2020 guidance, are those now in place there? Yes, that's correct. And so, when you say that you can't challenge the guidelines because the government would say that you're barred by the injunction, how does that work? No, not that we're barred by the injunction. They would say it would be moot to challenge it because they're still subject to the Maryland District Court order. It's this cul-de-sac that we would be driven into. If you challenge the 2020 guidance, they'd say, well, we're subject to the Maryland order. If you challenge the Maryland order, well, we've got the 2020 guidance. There are two legs that both support the deadline. Did you participate in the appeal from the injunction in the fourth circuit? No, VaporStock has never been a party to that. There were some other parties that were granted intervener status. If you are barred because the injunction is in place, wasn't that just your fault for not participating in the injunction appeal? Well, there were other groups that belatedly were granted intervener status after the final judgment in the Maryland court. Now, that was well after this case was filed in the Eastern and at the time this case was filed, the Maryland District Court in that case had already previously rejected earlier motions for intervener status by other vaping industry interests. Of course, that went into our thinking. That's the sequence of events, how it played out. All of that happened much later. Let me ask you this question. Why is the If the guidance sets the same time frame, why is the injunction necessary? Because the issue before the Maryland District Court was this 2017 guidance that the Maryland District Court vacated and then entered a remedial order setting the new date. That new date is now decision vacating the earlier guidance document. That part is arguably mooted by the new guidance, but I don't think there's an argument. Certainly, DOJ has embraced or FDA has embraced the view that the final order setting the new deadline is somehow preempted or mooted by the guidance document. I see your time is short. I'd like to ask a couple of questions that deal with the standing analysis of the District Court without necessarily looking at later actions that you've been talking about just now. I can understand her analysis. I'm looking at your complaint. The background is when I think about standing, I think about whether the remedy sought actually benefits the plaintiff or whether it will cause a benefit to the plaintiff or whether it's redressable as sort of two aspects of the same coin. The remedy you seek primarily, you've got them labeled A and B. A basically looks like an APA challenge to an unlawful agency action, which you would invalidate. That's sort of standard judicial review. The District Court makes a pretty, I mean, you have your arguments, but it makes a pretty strong analysis, which suggests that that action, if we invalidate it, whatever it is you submitted to the APA, the EPA submitted to the, or the, I'm sorry, the FDA submitted to the court, that that wouldn't result in any benefit to you because of all these other things going on. But then you go on and ask for a preliminary and permanent injunction on preventing enforcement action after a certain date. What's your understanding of the District Court's standing analysis with respect to the second aspect of what you're requesting? Well, I don't think the court addressed redressability at all. Part of what we were asking at the time the complaint was filed, there was not even a push that out six weeks after we filed the complaint. That was part of the relief we were seeking was to compel them to do that because here we faced a deadline, but no, nothing at all in terms of even a proposed rule. We still don't have the final rule. I don't think the court addressed, I think the court's decision was based entirely on the causation analysis, but in terms of like the point I made before, in terms of the redressability, um, simply by enjoining enforcement until a reasonable period of time after a final rule is entered that gives Vapor Stockroom a fair, you know, shot to know what the, the contents of the hard contents of the PMTR and then prepare it based on that. That's really what they're looking for at the end of the day. So I'm not sure that the court, the district court frankly really addressed redressability, um, one way or the other was really all about causation. Mr. Hire, just to follow up that point, um, the, you know, you seek an injunction against enforcement of the deadline, but, uh, you know, just picking up where judge Rogers left off. I mean, why wouldn't that injunction be limited to enforcement of the attachment to the brief as opposed to the 2020 guidance? Yeah. I mean, we can't enjoin some completely independent, uh, agency action, which might have a perfectly legitimate basis and be fully compliant with the APA. You know, theoretically we could enjoy some, some prior action that doesn't comply with the APA, but your problem is we have this later action which would not be subject to the injunction. What, what am I missing in, in that? Right. We've had really the ground shift under our feet, right. From the time this complaint was filed. Maybe you ought to just get on with challenging the 2020 is kind of what I'm wondering here. Because I don't think we can help you unless I'm missing something. You want an injunction, but it's an injunction as to some prior action, which seems to have been superseded. I respectfully disagree. It's been superseded your honor, but unless, you know, safety is going to stipulate that, that they think that Maryland district court order is now null and void and no effect, they will absolutely point to that. Yeah. How is it? I mean, would you agree that we cannot enjoin a later agency action, which is not the subject of your complaint? That's my question. Yeah. I, I, your honor, I think given the shifting ground here, not because of anything my client has done because of FDA's actions during the penalty. Yes or no. Can you, can you, can you in this suit obtain an injunction against later agency action that is not the subject of your complaint? Yes, your honor. Because the court, because of the court's equitable powers, the court's inherent equitable powers. Okay. All right. Okay. Thank you for your, for your answers to our questions there. And we'll hear from Ms. Powell. May it please the court, Lindsay Powell for the FDA. As the questioning has already gotten at here, there's only one claim before the court at this point, which is plaintiff's challenge to the government's filings in a separate case. And for the reasons concluded by the district court, among other reasons, that's not something that plaintiffs can challenge. Their alleged injury is not fairly traceable to the government's filings. I do think it's important as the questioning has suggested that there are other things plaintiffs could have done here. So a number of industry groups did participate at the remedy stage in the AAP proceedings. So it's not as though industry had no way of protecting their interests with respect to the conversation that was going on in the district court in Maryland. I think about 85 pages of industry briefs were filed on the very concerns that a plaintiff is now raising. Notably among the industry groups that participated there was a trade association of which plaintiff is a member. So there was certainly awareness of the litigation and opportunity to participate. And that's the to the issues that were being litigated in that case. But that case has now been litigated and an injunction entered by a separate court. And there's no question here that plaintiff can't challenge that injunction here. And indeed plaintiff... Is there a challenge pending to the 2020 guidance document? Is there an APA challenge somewhere? There's not, Your Honor. But again, that is something that plaintiff or another party could bring. It just needs to be brought as such. For the reasons we've discussed in our brief here, we think a challenge along those lines would fail for a number of reasons. But it is certainly a claim... Do you agree with your opponent that one of the reasons that challenge would fail is because of the existence of the injunction in Maryland and it would moot any challenge to the extent that it went to dates that were in that guidance document? That's not a position that we've taken so far. I mean, certainly there is significant overlap between the injunction entered in FDA's guidance. But among the reasons we state that a challenge to the 2020 guidance would be unreviewable, as set forth in our brief, we don't cite a mootness argument there. So of course, if there is a challenge to the 2020 guidance, the government will need to examine its litigating position and determine which arguments to put forward. But we, at this point, have identified the fact that the guidance is an exercise of agency discretion and not reviewable for that reason as being among the principal grounds that it would not be subject to challenge. Ms. Powell, would you agree that the later guidance, the 2020 guidance, supersedes any earlier agency action establishing this September deadline? What I'm getting at is, what I'm seeking is an assurance that the agents, if somebody were to bring, if the same party, Vapor Technology, were to challenge the 2020 guidance instead of an assurance that the agency is not going to say, well, this challenge to the 2020 document is, they lack standing or it's moot or not justiciable because something that happened in Maryland is already, is separately creating the same obligation. I cannot, at this point, say definitively what our position would be on mootness there. Certainly with respect to the agency's own current enforcement priorities, the 2020 guidance as revised in April to account for the challenges presented by COVID. Let me ask you, let me ask you this question. The agency's position is that there is currently a September 2020 guideline, correct? Yes. What is the basis of that deadline? What is the legal basis, the document that creates that deadline? A few things, John. In terms of how the agency views its enforcement guidance in this area, we don't view it as creating legal obligations, so it's not a deadline in a legal sense. It's a statement of the agency's enforcement priorities and what it expects to enforce. With that caveat, it is the January 2020 guidance, as revised in April to reflect the logistical challenges presented by COVID, that identifies FDA's intent to begin enforcing with respect to products that don't have their pre-market review applications by that time. Is it exclusively that January 2020 guidance that sets forth this intention on the agency's part? Yes. In terms of intention on the agency's part, yes. The district court's injunction does continue to have effect in some sense. Although we did argue and continue to believe with respect to the challenge on appeal in that Maryland case, that a particular challenge brought by the industry intervenors, the vaping group intervenors, was moot because of the relationship between the challenge and the 2017 guidance that had been superseded. We have not taken the position that the injunction has no effect. FDA is still obligated to follow that injunction, and its guidance has been consistent with that. So there is some scenario where you could be in contempt of court or that injunction if you delayed the enforcement? Is that right? Yes, Your Honor. I think that is right. The agency views itself as being bound by that injunction, and its enforcement guidance issue subsequently has been consistent with the terms of that guidance. I just wanted to bring the conversation back to this case and what is actually at issue here. Again, I think while these other questions are certainly interesting and maybe relevant in other suits, they don't actually bear on the question presented here, which is whether plaintiffs can challenge FDA's filings in the Maryland case, and it cannot. That is what I wanted to ask a little bit about exactly what there is no standing to and what there is no merit to, and to distinguish the analysis a little bit. Invalidating the submission that included the 10-month deadline is the first part of what I pointed to these two parts that they asked for already. I can understand the argument that the district court made that you support that plaintiffs lack standing to challenge that because they have not shown how invalidating that submission will result in any benefit to them. It just won't have that effect, even apart from this later 2020 document. The concern I have, just a technical one, is that they go on and ask for a preliminary and permanent injunction not to enforce after a certain date. If the continued enforcement had been an alleged effect of this submission, then you could say as part of your standing analysis that there was no standing for this case as a whole. If you just look at the second part, it asks for a preliminary injunction, which will clearly benefit the plaintiffs if it were entered. It is hard to say that there is no standing to challenge that. Instead, we would have to come up with a substantive reason for why that is meritless. That is what I thought Judge Kethledge, at the end of his questioning of your opposing counsel, was laying out. He was saying we cannot enjoin some action that may result from some other action as to which there is no standing. My question makes sense. Pretty clearly, they will suffer harm if they do not get this injunction. In that sense, if you just look at this as an injunction suit to enjoin enforcement, for that part of an affirmance, if we were to affirm, it would have to be based not on standing law, but on the lack of substance of the request for an injunction. Even looking at that second part of the request and the prospective injunctive relief that they are seeking, there is still a causation problem because that requested relief is not tied to the action that they are challenging. If I could interrupt, it is a causation problem which suggests that there is no merit to it, not a causation problem which says there is no standing. You have to show if you are going to ask for an injunction, you have standing to ask for an injunction because an injunction would benefit you, but you can say there is no law which supports the injunction because you have not demonstrated there is any law which leads to the entry of this injunction, which is a merits argument. It is both a standing and a merits problem. It certainly is not the case that any time you are seeking injunctive relief, you necessarily have standing just because an injunction would benefit you. If it will help you, then there is a case or controversy. There is a dispute. The whole issue in Lujan and all of those cases is whether the relief that you get will benefit you as opposed to somebody else or as opposed to the public at hand. Is it a traceability question versus an injury in fact question then? Yes. It is the Maryland District Court decision that is the source of the, if the injury is the, my understanding is the injury is the deadlines, the delay or the non-delay in the issue. Yes, Your Honor. It is. That is what the District Court correctly said here. Maybe it would help me. You said it is both a merits issue and a standing issue. I am having trouble seeing how it is a standing issue. How would you say it is a merits issue? What would be the answer if we think about it as a merits issue? I think if we set aside the threshold issues here and looked at what is the claim. The claim is an allegation that FDA's filings were arbitrary and capricious. Then the remedy that would follow from a finding that that were true would be to set aside or in the unusual case to enjoin those filings. I think whether you are pressing on the merits or pressing on standing, it shows the strangeness of the way this challenge is being framed and the reasons why it does not work. I am with you on that. How would you phrase that in terms of merits? In terms of you are not entitled to an injunction? Judge Kethledge basically says I cannot see how an injunction could logically result from this kind of determination. The other side says why not? So why not? Yes, Your Honor. I do think that there are a number of different that could be articulated. I continue to think that the mismatch between what is being challenged and what is being sought is at the heart of this. Again, that is true whether you frame it as standing and traceability. You could just say that the relief does not match up with the arguments that they are making. Yes, Your Honor. That is correct. Mr. Heyer can of course respond to this, but one characterization might be that the injunction they seek is a lot broader than the agency action they are challenging. Yes, Your Honor. That is certainly true. Again, if the allegation is that FDA's filings are arbitrary and capricious, then the relief provided needs to be in connection with those filings. Of course, that would not really do anything for anybody. Those filings themselves do not have any effect. Setting them aside, I honestly do not even know what that means. They are not themselves agency action, but because that is not a jurisdictional question, the court does need to address standing first. For the reasons stated by the district court, there is a traceability problem here. I do briefly want to touch on the cat's paw theory because that is the main thing, sort of line of authority on which plaintiff relies in urging that the causation is sufficient to support standing. I think it is an extraordinary mismatch between the sequence of events we have in this case and what you see in those employment cases. There you have a biased supervisor pulling one over on a decision maker who is not aware of the bias, sort of manipulating the ultimate decision maker in a way. That is of course not the reality of judicial decision making. No one is pulling one over on the district court here. We made filings to the district court to try to present the issues fully, ideally to persuade. Notably, what those filings said was not, please enter this 10-month deadline. What we said is, please do not enter an injunction. If you do, please do not let it be the four months that the plaintiffs are seeking in the Maryland case. We explained all the reasons why four months would be very difficult for both the agency and industry. It is not even true as a factual matter that the agency was urging this 10-month deadline there. But the central authority that plaintiff cites, these cat's paws cases, are really a poor fit when you are talking about the role of the judicial decision maker and the independence of that decision. Very good. Any further questions from the other judges? Okay. Thank you, Ms. Powell. We will hear rebuttal from Mr. Heyer. I think you need to unmute. Are you muted? Thank you. Your Honor, going back to this issue of the two bases for the deadline, you heard counsel say that the Maryland district court injunction, the Maryland district court order still has continued effect. There was not a commitment that they would not pursue a mootness argument, which I think is an absolute prerequisite for a line of thinking. There is nothing we can do to help you about an injunction entered by a district court in Maryland, right? No, I understand. I don't think you need to. Secondly, I want to underscore that with the COVID situation, when the deadline was extended from May to September, FDA went back to the Maryland district court and asked it to amend its order. If it was no longer of effect, that would have been completely unnecessary, but that is part and parcel of what FDA did. There would be no scenario on this issue of being pulled between two competing court orders. There would be no scenario. All we're asking for is an injunction as to one party, Vapor Stock Room. There's no scenario I can foresee where FDA would ever be held in contempt of the Maryland district court order for a failure to enforce against Vapor Stock Room, which would be consistent with the injunction that we seek here. The Maryland district court order specifically gave FDA discretion to pursue enforcement action when it felt necessary and actually provided for a good cause exception for those that couldn't get their PMTAs filed by the deadline as well. There are certainly avenues that FDA could... Even on its own terms, that argument rests on a fiction that if we enjoined the agency from enforcing the deadline against Vapor Stock Room, that the agency's forbearance with respect to Vapor Stock Room is an act of discretion under the district court's order. That's just not true. It would be us telling the agency that they're barred from compliance, basically. They can't even consider enforcement as generally directed by the district court. Yeah, I understand, Your Honor. It's a valid point. I think it's going to be directing them how to exercise their discretion, but I understand your point. One point I wanted to make as well, I think there's an argument here that FDA is, to the extent that they're claiming that the threatened harm to Vapor Stock Room emanates exclusively from the Maryland district court order, there's really a judicial estoppel argument here because they previously successfully argued to the Fourth Circuit that there was no relief the Fourth Circuit could grant, and that's what the Fourth Circuit ultimately did. They dismissed the appeal as moot. There was no relief that they could grant vis-a-vis the Vapor industry appellants in that case, intervener appellants. So they've now taken that position. They've gotten dismissal of the appeal from the Fourth Circuit based on it, but now they want to say here that we're just seeking relief based on it. So I see I've run out of time, but thank you, Your Honor. Well, thank you, and just one quick follow-up on that. I mean, did the appellants seek vacater of the district court's injunction in Maryland if the Fourth Circuit was dismissing an appeal of that injunction on mootness grounds? I believe, and certainly go back on PACER in reference, but I believe that's exactly what they were seeking. I think they were seeking vacater of that. I don't remember how it all played out in terms of the briefing and the argument, but certainly there was a switch in FDA's position. In fact, FDA took a long time to even note an appeal from the Maryland orders. Well, I mean, I guess another way to put it is, did the Fourth Circuit vacate the injunction pursuant to Munsingware, which is courts of appeals usually do if they are barred or precluded by mootness from reaching the merits of an order on appeal? No, they did not. It remains effective to the state. It's not been vacated. And I guess, do you know whether the appellants sought vacater on Munsingware grounds as opposed to merits grounds? I don't recall because in addition to the, I honestly don't recall, in addition to the vapor appellants, there were some cigar association appellants that had different arguments. So in the whole mix, and Ms. Powell may have a better recollection, I don't. Okay. Okay. Well, thank you both for your arguments. It is a complicated case. We'll consider it carefully. The case will be submitted and the clerk may call the next case.